D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CHERYL FRANCIQUE PARSONS,

                          Plaintiff,

      -against-

JPMORGAN CHASE BANK, N.A.,



                        Defendant.
-------------------------------------------------------------------X

**ORDER**

**16-CV-0408 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Cheryl Francique Parsons brings this employment discrimination suit against Defendant JP Morgan Chase Bank, N.A. ("Chase"), claiming discrimination based on her race and age. Plaintiff alleges that Chase violated her rights under the following laws: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.; and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.

      Before the court is Defendant's fully briefed motion for summary judgment. (Def. Mot. for Summ. J. ("Mot.") (Dkt. 38); Mem. in Supp. of Mot. ("Mem.") (Dkt. 38-2).) For the following reasons, the motion is GRANTED and the case is DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

### A. Facts

      This court constructs the following statement of facts from the parties' Local Rule 56.1 statements of undisputed fact and parties' submitted admissible evidence. (See Def. Rule 56.1

Statement ("Def. 56.1") (Dkt. 38-1); Pl. Resp. to Def. 56.1 Statement ("Pl. 56.1") (Dkt. 39-1).)

See also Holtz v. Rockefeller & Co., 258 F. 3d 62, 73 (2d Cir. 2001) ("[A] court is not required

to consider what the parties fail to point out in their Local Rule 56.1 statements.") (internal

quotation marks and citations omitted).  All evidence is construed in the light most favorable to

the non-moving party with all "reasonable inferences" also drawn in its favor.  ING Bank N.V. v.

M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018) (internal quotations and

citation omitted).  The following facts are uncontested unless otherwise stated.

### 1.      Plaintiff's Background and Early Employment History

Plaintiff is an African-American woman born in 1961. (Def. 56.1 ¶ 1.)  Plaintiff began

her employment with Chase's predecessor banks in 1988. (Id. ¶ 2.)  She was promoted to a

Branch Manager position in 2006. (Id. ¶ 3.)  As a Branch Manager, Plaintiff's role was to

oversee the branch's daily operations and ensure compliance with Chase's policies and

procedures. (Id. ¶ 4.)  During her employment with Chase, Plaintiff was a branch manager at

several different locations in Queens, Manhattan, and Brooklyn. (Id. ¶ 5.)  Plaintiff's suit stems

largely from her employment as a Branch Manager at the Peter Cooper Chase Bank in

Manhattan and the Flatlands Chase Bank in Brooklyn from 2006 to 2015. (See Compl. (Dkt. 1)

¶¶ 20-25, 31-40.)

Plaintiff transferred to the Peter Cooper Branch in Manhattan in January 2011. (Id. ¶ 8.)

She managed the Peter Cooper branch under the supervision of Taskin Mumcuoglu, a Chase

District Manager. (Id. ¶ 9.)  In Plaintiff's performance evaluations, Mumcuoglu wrote that

Plaintiff was "very personable," "liked and respected by her team," a "natural leader," and that

she "has potential to be the best." (Id. ¶ 13.)  Plaintiff's initial working relationship with

Mumcuoglu was "great" but, at some point, their relationship deteriorated. (Id. ¶¶ 11,14; Pl. 56.1 ¶ 14.)

### 2.    Plaintiff's Denied Promotion in 2013

In May of 2013, Plaintiff applied for a Queens District Manager position with Mumcuoglu's recommendation. (Def. 56.1 ¶¶ 15, 16.) She did not receive the promotion. (Id. ¶ 18.) Plaintiff does not know the identity of the managers who made the decision not to promote her. (Id.) Plaintiff, however, believes that her race played a role in Chase's decision-making not to promote her. (Id. ¶¶ 18-19; Pl. Aff. (Dkt. 39-11) ¶¶ 6, 26.) She bases this belief on a statement relayed to her through colleagues in 2011. Plaintiff alleges that she heard that a District Manager, James Caruso ("Caruso"), told Anna Kang ("Kang"), another District Manager, that Chase denied Plaintiff's promotional application in 2011 because she needed additional exposure to "affluent communities." (Pl. Dep. ("Pl. Dep. A") (Dkt. 38-6) 140:5-7.) Kang allegedly relayed this comment to Plaintiff when Plaintiff applied for the same District Manager position two years prior to her 2013 District Manager application. (Id. 140:10-18.) Plaintiff acknowledges that she never spoke to Caruso directly about the reason(s) she was not selected for the promotion to District Manager either in 2011 or 2013. (Def. 56.1 ¶ 19.)

### 3.    Plaintiff Complained to Human Resources about Mumcuoglu

On or about June 24, 2013, Plaintiff complained to Chase's Human Resources about Mumcuoglu. (Id. ¶ 27.) Plaintiff testified that she complained about Mumcuoglu's "management style" and about his conduct toward both African-American and non-African-American employees. (Id. ¶ 28, 31.) The parties otherwise dispute the nature of Plaintiff's complaint. Plaintiff testified that she complained about Mumcuoglu's allegedly discriminatory comments about preferring to hire younger employees. (Pl. 56.1 ¶ 25.) Chase, however,

contends that Plaintiff based her complaint against Mumcuoglu on "the way he spoke . . . to other staff members," as opposed to interactions solely between Mumcuoglu and Plaintiff. (Def. 56.1 ¶ 29.) Both parties agree that Plaintiff did not identify any specific adverse employment actions in her complaint to Human Resources against Mumcuoglu. (Id. ¶ 32; Pl. 56.1 ¶ 32.)

Plaintiff also testified that she believed Mumcuoglu's conduct was racially motivated because he asked her to discipline two African-American employees for not performing their job functions. (Def. 56.1 ¶ 34.) Specifically, Plaintiff testified that Mumcuoglu made comments about other African-American employees that led her to believe that he wanted to discipline the women because of their race. Plaintiff stated that Mumcuoglu said: "look at their hair, look at them, look at how they're dressed" when speaking about the African-American employees. (Pl. Dep. ("Pl. Dep. B") (Dkt. 39-4) at 76:14-16.) Plaintiff testified that Mumcuoglu made other racially discriminatory remarks such as the statement: "Asians and Indians are the best people to hire." (Id. at 93:17-20.)

Following Plaintiff's complaint in June 2013, Chase investigated Plaintiff's concerns. (Def. 56.1 ¶ 36.) During this investigation, Chase interviewed other employees of different backgrounds and ages who were also under Mumcuoglu's supervision. (Id.) These employees complained about Mumcuoglu's "abrasive" management style. (Id. ¶ 37.) Three weeks later, a Chase Market Manager, Mike Malone ("Malone"), recommended that Chase terminate Mumcuoglu's employment due to "inappropriate management style" that "violates company policy with regard to harassment free workplace." (Recommendation for Termination-Mumcuoglu ("Rec. for Term.") (Dkt. 39-10 at ECF p.1).) Malone noted that Mumcuoglu had "multiple complaints raised against him in 2009 and 2010 with regard to unprofessional treatment in the way he manages and communicates to his employees." (Id.) Malone also

documented that Chase previously provided coaching to address Mumcuoglu's "constant texts and the way he speaks to his employees" in 2009 and 2010. (Id.) Malone concluded that Chase should terminate Mumcuoglu's employment, since Mumcuoglu "continued to perpetuate a management style that is demeaning, intimidating and demoralizing to his employees." (Id.) As a result of the investigation, Chase terminated Mumcuoglu's employment one month later in August 2013. (Def. 56.1 ¶ 38.)

4.    Plaintiff's Time at the Flatlands Branch

After Plaintiff's complaint, Chase offered to transfer Plaintiff to a different branch. (Id. ¶ 39.) Plaintiff inquired about a Branch Manager position in Brooklyn and interviewed with Veda Davis, a Brooklyn District Manager, and Mary Ann Arcaro, a Brooklyn Market Manager, for a position at the Brooklyn Flatlands Branch. (Id. ¶¶ 40, 45-46.) Davis is an African-American woman, born in 1957, and Arcaro is a Caucasian woman, born in 1962. (Id. ¶¶ 41, 43.) Davis and Arcaro chose Plaintiff as their "first choice and best candidate" to help re-open the Chase Flatlands branch. (Id. ¶¶ 46-47.) Plaintiff transferred from the Chase Peter Cooper branch to the Flatlands branch in September of 2013 to work under Arcaro. (Id. ¶¶ 44-48.)

The parties dispute the nature of Arcaro's working relationship with Plaintiff. Plaintiff contends that Arcaro "harbored racial animus" based on statements Arcaro made that Davis conveyed to Plaintiff. (Id. ¶ 50; Pl. 56.1 ¶ 51.) Plaintiff testified that "[Davis] would say to me that [Arcaro] puts a lot of pressure on her, and it's all because of [Davis's] color." (Pl. Dep. B at 113:4-6.) However, when asked whether Plaintiff ever heard Arcaro make racist comments, Plaintiff testified that she had "never really been around [Arcaro] like that." (Id. at 104:8-9.) Plaintiff herself characterized Arcaro as an "okay manager" who "had some issues with the employees." (Veda Davis Depo. (Dkt. 39-5) 429:19-21.) Davis also stated that she "never felt

pressured by Arcaro to terminate any employee based on their race or age" (Veda Davis Decl. (Dkt. 38-20) ¶ 11), and she never "told Plaintiff that [she] believed that Arcaro was racist or that any of Arcaro's directives were based on race or age. (Id. ¶ 12.) Plaintiff never filed a complaint with Human Resources about Arcaro during her employment. (Def. 56.1 ¶ 54.)

     5.    <u>Plaintiff's Termination</u>

Chase received several complaints from three different employees (two of them anonymous) about Plaintiff in the Fall of 2014. (Id. ¶ 56.) These complaints addressed alleged Chase policy violations concerning unprofessional behavior and poor leadership, solicitation of donations against company policy, and improper computer credential use. (Id.) Specifically, Plaintiff was believed to have conducted transactions from another Chase employee's, Kemo Chin-lyn Spence's, cash box using Spence's log in credentials. (Id. ¶¶ 56-57.)

Alison Gray, the Lead Teller Operations Specialist at the Flatlands Branch and an African-American woman, made the report that Plaintiff conducted teller transactions using another employees' login credentials. (Id. ¶ 57.) Chase investigated the complaints, interviewed several employees, and reviewed teller transactions and surveillance photos. (Id. ¶ 69.) Chase determined that Plaintiff violated Chase policy and procedures on two counts: first, Plaintiff used another Chase employee's login information to log onto a Chase computer terminal; second, Plaintiff was impatient and disrespectful to her subordinates. (Id. ¶¶ 64-68.)

Plaintiff denies intentionally operating a computer terminal using another employee's login credentials. (Pl. 56.1 ¶ 71.) She contends that she "never signed on with anyone's password or provided [her] password to anyone in the Branch." (Plaintiff Interview Statement at 1 (Dkt. 38-7 at ECF p.2).) She explains that the improper log-on was a mistake: Plaintiff assumed that she was still signed on to the computer. (Def. 56.1 ¶¶ 89, 91-92.) Despite this

justification, Chase's investigators did not find Plaintiff's explanation credible and recommended that Chase terminate Plaintiff's employment at the Bank. (Id. ¶¶ 93, 95-97.) Chase did not discipline Spence because she denied providing her password to Plaintiff and therefore, there was no evidence that Spence either provided Plaintiff her password or failed to safeguard it. (Id. ¶ 94.) Chase terminated Plaintiff's employment shortly after she returned from a leave of absence for an injury on or about September 17, 2015. (Id. ¶¶ 99-104.) Plaintiff was replaced by L.B., an African American female born in 1967. (Id. ¶ 105.)

### B. Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 11, 2015. (Compl. ¶ 5.) On November 19, 2015, she received a notice from the EEOC of her right to sue (Notice of Right to Sue (Dkt. 1 at ECF p.13), and timely initiated this action asserting that Chase: (1) discriminated and retaliated against Plaintiff for engaging in protected activity under Title VII, NYSHRL, and the NYCHRL, (2) subjected Plaintiff to a hostile work environment on the basis of her age and race; and (3) discriminated against Plaintiff based on her age under the ADEA. (Compl. ¶ 2.)

Defendant now moves for summary judgment on each of Plaintiff's claims. (Mot.) With respect to Plaintiff's discrimination claims, Chase asserts that Plaintiff has failed to adduce evidence establishing either a prima facie case of or pretext for disparate treatment. (Mem. at 14-23.) As to Plaintiff's retaliation claim, Chase argues that Plaintiff failed to show a causal connection between the protected activity and the adverse employment action. (Id. at 21-22.) Finally, Chase asserts that Plaintiff has failed to adduce evidence establishing a prima facie case of hostile work environment. (See Def. Reply Mem. of Law in Supp. of Mot. ("Def. Reply") (Dkt. 40) at 6-7.)

## II.    LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under

governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit

a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89,

98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The

movant may discharge this burden by showing that the non-moving party has 'fail[ed] to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich

Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-

movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs.,

Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting

Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the

underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the

light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp.,

856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46

F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477

U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true

8

nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted)

## III.    PLAINTIFF'S 56.1 COUNTERSTATEMENT

As a threshold matter, Defendant urges this court to strike Plaintiff's 56.1 Counterstatement because it "entirely ignores the requirements of [Local] Rule 56.1." (Def. Reply at 1.) Specifically, Defendant contends that Plaintiff's counterstatement is "filled with conclusory assertions and is without citation to evidence." (Id.) Local Rule 56.1(d) provides that "each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible" as required by Fed. R. Civ. P. 56(e). Holtz, 258 F.3d at 73 (alteration adopted) (citations omitted).

The court will not strike down Plaintiff's 56.1 counterstatement in its entirety. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Id. (citations omitted). However, the court will strike down specific denials in Plaintiff's 56.1 counterstatement that are defective. "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the [c]ourt is free to disregard the assertion." Id. Specifically, the court will strike down Plaintiff's denial of paragraphs 25 and 90 because the evidence cited does not support the denial of the relevant factual assertions in Defendant's 56.1 statement. (See Pl. 56.1 ¶¶ 25, 90.)

Defendant also asserts that plaintiff's affidavit repeatedly contradicts her own deposition testimony and is filled with "conclusory allegations." (Def. Reply at 1.) As an example, Defendant points out that Plaintiff testified in her deposition that she did not apply for a

promotion after she left the Peter Cooper branch.  (Pl. Dep. A at 144: 4-6.) ("Q. Did you apply for any promotions after you left Peter Cooper branch? A. No.").  In Plaintiff's subsequent affidavit, she said "I applied for several district manager positions." (Pl. Aff. ¶ 16.)  While the court does not find the statement in the affidavit to be directly contradictory to the statement in the deposition because it is conceivable that Plaintiff was referring to the 2011 and 2013 promotional opportunities, the court is mindful that Plaintiff cannot "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts [her] previous deposition testimony."  See Clayborne v. OCE Bus. Servs., 381 F. App'x. 32, 35 (2d Cir. 2010) (summary order) (quoting Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996)).  Accordingly, with respect to Plaintiff's affidavit, the court cites only those statements that are not clearly inconsistent with her depositions taken in this case. Fei Long Zhang v. Alvarado, No. 15-CV-4373 (NGG) (JO), 2017 WL 6375732, at *1 (E.D.N.Y. Dec. 12, 2017).

## IV.   DISCRIMINATION CLAIMS

### A.   Disparate Treatment Claims Under Federal and State Law

Plaintiff claims disparate treatment on two grounds: (1) race discrimination in violation of Title VII, the NYSHRL, and the NYCHRL; and (2) age discrimination in violation of the ADEA, the NYSHRL, and the NYCHRL.  (Compl. ¶ 41.)

#### 1.   Legal Framework

Courts analyzing claims of discrimination under Title VII, ADEA, NYSHRL, and NYCHRL use the familiar three-step burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See, e.g., McGill v. Univ. of Rochester, 600 F. App'x 789, 790 (2d Cir. 2015) (summary order)

(applying McDonnell Douglas to both Title VII and NYSHRL discrimination claims); Mandell

v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (analyzing plaintiff's discrimination

claims under Title VII, the NYSHRL, and NYCHRL together); Concepcion v. City of New

York, No. 15-CV-2156 (AJP), 2016 WL 386099, at *18 (S.D.N.Y. Jan. 29, 2016) (analyzing

Title VII, ADEA, and NYSHRL claims under McDonnell Douglas).

     Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie

case of employment discrimination. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248,

252-53 (1981). To establish a prima facie case, a plaintiff must show that: "(1) she is a member

of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse

employment action; and (4) the action occurred under conditions giving rise to an inference of

discrimination." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell

Douglas, 411 U.S. at 802). "Generally speaking, a plaintiff's burden of establishing a prima

facie case in the context of employment discrimination law is minimal." Collins v. N.Y.C.

Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (quotation marks omitted). If the plaintiff can

establish a prima facie case of discrimination, "such a showing will raise a temporary

'presumption' of discriminatory motivation, shifting the burden of production to the employer

and requiring the employer to come forward with its justification for the adverse employment

action against the plaintiff." Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015)

(citing Burdine, 450 U.S. at 253-54). The employer satisfies this burden if it can proffer a

"legitimate, nondiscriminatory" reason for the adverse action. See Vega v. Hempstead Union

Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (citing McDonnell Douglas, 411 U.S. at 802).

"Plaintiff must then be afforded the opportunity to prove by a preponderance of the evidence that

the defendant's proffered, nondiscriminatory reason was not its true reason for the employment

decision, and that . . . discrimination was defendant's real motivation." Dais v. Lane Bryant, Inc.,

No. 97-CV-2011 (PKL), 2001 WL 1328390, at *2 (S.D.N.Y. Oct. 29, 2001) (citing St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993)).

The standard for establishing that the defendant's real motivation for the adverse

employment action was discrimination varies by cause of action.  For a claim under Title VII, the

comparatively lenient "mixed-motive" standard applies:  "An employee who alleges status-based

discrimination under Title VII [must] . . . show that the motive to discriminate was one of the

employer's motives, even if the employer also had other, lawful motives that were causative in

the employer's decision." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 343 (2013)

(emphasis added); see 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is

established when the complaining party demonstrates that race, color, religion, sex, or national

origin was a motivating factor for any employment practice, even though other factors also

motivated the practice.").  Claims under the ADEA, however, are subject to a higher standard:

"[A] plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."

Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (emphasis added); see 29 U.S.C.

§ 623(a)(1) (prohibiting adverse employment actions that are undertaken "because of such

individual's age" (emphasis added)).  It remains an open question in this Circuit whether 'but

for' causation is required in order to prove pretext under NYSHRL.  See Barone v. S & N

Auerbach Mgmt., Inc., 645 F. App'x 13, 14 (2d Cir. 2016) (stating that the Second Circuit has

"assumed without deciding" that but-for causation is required for discrimination claims under the

NYSHRL but that "[t]he issue has not been definitively resolved in the New York courts").

Nevertheless, the court will assume but not decide that the lower standard applies to the

NYSHRL because, as explained below, Plaintiff's claims cannot succeed even under that lower requirement.

>       2.      Prima Facie Case

In accordance with the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of discrimination. As stated above, this requires a showing that Plaintiff is a member of a protected class, that her job performance was satisfactory, that she suffered an adverse employment action, and that the action occurred under conditions giving rise to an inference of discrimination. "A plaintiff's burden of establishing a prima facie case is de minimis." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

Here, it is undisputed that the plaintiff belongs to a protected class and was qualified for her position at Chase. (Def 56.1 ¶¶ 2-6.); see also Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 92 (2d Cir. 2001). With the first two prongs of the prima facie case satisfied, the court turns to the other two.

>       a.      Adverse Employment Actions

In the context of discrimination claims, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment." Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008) (citation and quotation marks omitted). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (quoting Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004)).

13

Plaintiff's race and age discrimination claims are based on three separate incidents: (1) her interactions with Mumcuoglu from 2011-2013; (2) her denied promotion in 2013; and (3) the termination of her employment in 2015. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion ("Pl. Mem.") (Dkt. 39) at 5-6, 14-16.) For the reasons provided below, this court finds that Plaintiff's promotion denial and subsequent termination constitute an adverse employment action to support a discrimination claim; however, her interactions with Mumcuoglu do not.

i.      Plaintiff's Interactions with Mumcuoglu from 2011-2013

Plaintiff has failed to assert any materially adverse change in the terms and conditions of her employment with respect to her interactions with Mumcuoglu.

Plaintiff contends that Mumcuoglu ordered her to discipline two African-American employees for not performing their job functions and made offensive comments in the workplace. (Pl. Dep. A at 79:20-25; 80:2.) Specifically, Plaintiff testified that Mumcuoglu commented on two female African-American employees' hair and dress. (Pl. Dep. B at 76:14-16.) Plaintiff further stated that Mumcuoglu told her that he prefers to hire Asians and Indians. (Pl. Dep. A at 93:19-20.) The court finds that neither of these actions constitute materially adverse changes in working conditions.

Criticism or offensive comments made to employees are not sufficiently material to constitute an adverse employment action. See Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396, 405 (S.D.N.Y. 2014) (quoting Gutierrez v. City of New York, 756 F. Supp. 2d 491, 506 (S.D.N.Y. 2010)); see also Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 570 (2d Cir. 2011) ("[C]riticism of an employee . . . is not an adverse employment action."); Dawson v. City of New York, No. 09-CV-5348, 2013 WL 4504620, at *10 (S.D.N.Y. Aug. 19,

2013) ("[The plaintiff's] allegations of excessive scrutiny, monitoring, and criticisms of her job performance do not constitute an adverse employment action."). Furthermore, Mumcuoglu's order to discipline the African-American employees does not constitute an adverse employment action because it is a part of the normal job functions of a Chase Branch Manager to manage the daily operation of the branch and to ensure compliance with Chase's policies and procedures. (See Def. 56.1 ¶ 4.) Finally, Plaintiff's interactions with Mumcuoglu did not result in materially negative consequences, such as a reduction in wages or a significant loss of material responsibilities. See, e.g. Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Eldridge v. Rochester City School Dist., 968 F. Supp. 2d 546, 557 (W.D.N.Y. 2013). Plaintiff's interactions with Mumcuoglu did not result in a materially negative consequence to Plaintiff and therefore does not constitute an adverse employment action.

ii.   Promotion Denial

Plaintiff alleges that the denial of her promotion in 2013 constitutes an adverse employment action. (Pl. Mem. at 1.) This court agrees. See Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003) (finding that a denied promotion constitutes an adverse employment action) (citing Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2003)). Since the standard is the same for Title VII and NYSHRL, a failed promotion also constitutes an adverse employment action under NYSHRL. Because the standard is more lenient under the NYCHRL, plaintiff's denied promotion also constitutes an adverse employment action under that statute.[1]

---

[1]The court agrees with Defendant that Plaintiff's discrimination claim based on her denied promotion in 2013 is time-barred under Title VII. (Mem. at 14 n.2.) For a Title VII claim to be timely, the alleged discriminatory conduct must have occurred less than 300 days prior to the filing of the EEOC charge. See 42 U.S.C. § 2000e-5(e)(1); see also Taylor v. City of New York, 207 F. Supp. 3d 293, 300 (S.D.N.Y. 2016) (citing Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126 (2d Cir. 2010). "Termination, failure to promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify' and claims based on each are barred if not timely filed." Valtchev v. City of New York, 400 F. App'x 586, 588 (2d Cir. 2010) (citing Nat'l R.R. Passenger Corp. v. Morgan,

iii.   Employment Termination

Plaintiff also alleges that the termination of her employment in 2015 constitutes an adverse employment action. (Pl. Mem. at 5-6.) It is well settled in the Second Circuit that termination of employment constitutes an adverse employment action. See, e.g., Galabya, 202 F.3d at 640 ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (citation omitted) (emphasis added); Terry, 336 F.3d at 138; Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004).

The court finds that Plaintiff suffered two adverse employment actions: her promotion denial and her subsequent termination. The inquiry before the court, therefore, is whether Plaintiff has established that either her promotion denial or her termination occurred under circumstances giving rise to a reasonable inference of discrimination.

> b.   *Circumstances Giving Rise to an Inference of Discrimination*

> i.   Age Discrimination

Regarding Plaintiff's denied promotion in 2013, the court finds that there is no circumstantial evidence giving rise to an inference of age discrimination. Plaintiff testified in her

---

536 U.S. 101, 114 (2002)). Plaintiff filed a charge of discrimination with the EEOC on March 11, 2015. (Compl. ¶ 5.) Therefore, since the denial occurred in 2013, Plaintiff's failure to promote discrimination claim is time-barred under Title VII. However, the court disagrees with Defendant that Plaintiff's claim based on her denied promotion is time-barred under NYSHRL and NYCHRL. (Mem. at 14 n.2.) The statutes of limitations for the NYSHRL and NYCHRL are three years from the filing of the complaint plus the tolled period during the pendency of the EEOC charge. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007); see also Taylor, 207 F. Supp. 3d at 302. Plaintiff filed her complaint on the present action on January 26, 2016. (See Compl.) Plaintiff filed a charge of discrimination with the EEOC on March 11, 2015, and the EEOC closed its file on the charge on November 19, 2015. (See id. ¶ 5.) Thus, the statute of limitations only precludes events that took place before May 18, 2012. The denial of Plaintiff's promotion occurred at some point in 2013, so the court considers it timely under NYSHRL and NYCHRL.

deposition that she "does not believe she was denied any promotions because of her age." (See Pl. Dep. A at 143:25-144:3; Def 56.1 ¶ 25.) Plaintiff points to an alleged remark by Mumcuoglu about how he preferred younger employees. (See Pl. Mem. at 15; Pl. Dep. A at 93.) This remark is not sufficient to establish circumstances giving rise to an inference of discrimination because it was not made by a decision-maker in plaintiff's 2013 promotional application and it was not in the context of her 2013 promotional application. See Henry, 616 F.3d at 149.

Regarding Plaintiff's termination of employment in 2015, there is also no circumstantial evidence giving rise to an inference of age discrimination. Plaintiff's replacement is an African-American woman who is merely six years younger than Plaintiff. (Def 56.1 ¶ 105.) See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (an "inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger."). Additionally, both of the decision-makers in Plaintiff's termination were about the same age as she. Davis was born in 1957, which makes her four years older than Plaintiff. (Davis Decl. (Dkt. 38-20) ¶ 1.) Arcaro was born in 1962, which makes her one year younger than Plaintiff. (Arcaro Decl. (Dkt. 38-21) ¶ 1.) This undermines any inference that either of these individuals may have had discriminatory purposes based on age. See Focarazzo v. Univ. of Rochester, 947 F. Supp. 2d 335, 339 (W.D.N.Y. 2013) (finding it difficult to infer age discrimination when decision-makers are "about the same age" as plaintiff). In any case, Plaintiff has not produced any evidence which suggests that her age played a role in her termination. Without such evidence, the court cannot find that there is circumstantial evidence giving rise to an inference of age discrimination. The court also notes that, under the ADEA, Plaintiff must show that age was the but-for cause of the employment decision. Gross, 557 U.S.

17

at 176. Plaintiff has not put forth any facts that would support the argument that age was the but-for cause of either her termination or the denial of her 2013 promotion.

Because Plaintiff has failed to establish a prima facie case of age discrimination under ADEA, NYSHRL, and NYCHRL, there is no triable issue of fact with respect to her age discrimination claims and Defendant's motion for summary judgment is granted with respect to Plaintiff's age discrimination claims.

### ii.    Race Discrimination

No reasonable fact-finder could conclude that Plaintiff's promotion denial in 2013 resulted from discrimination. Plaintiff's claim rests on an alleged comment made by Caruso, a District Manager, to Kang, another District Manager, in 2011.[2] (See Compl. ¶ 17.) Plaintiff claims that Caruso told Kang that Plaintiff's promotion application in 2011 was denied because Plaintiff needed additional exposure to "affluent communities." (Def. 56.1 ¶ 19.)

There is no evidence that suggests Caruso was involved in the decision-making process regarding Plaintiff's 2013 promotional application. Moreover, the alleged comment made by Caruso is unrelated to Plaintiff's 2013 promotional opportunity. The comment was uttered in reference to her 2011 opportunity for promotion, which is not the basis of her claim. (See Def 56.1 ¶ 19.) The fact that the remark was made two years prior also severely undermines the relevance of the statement. See Ellis v. Century 21 Dep't Stores, 975 F. Supp. 2d 244, 276 (E.D.N.Y. 2013) ("[C]ourts in this Circuit have generally found that a five month lapse between an allegedly discriminatory statement and an adverse employment action is too long a gap to find

---

[2] Defendant claims that Caruso's statement should not be considered because it is inadmissible hearsay. (Mem. at 15.) The court declines to address this issue because, even if the statement is considered, Plaintiff still fails to establish her prima facie case of race discrimination with respect to her failed promotion in 2013.

the remark probative of discrimination without some other evidence that the remark was related to the adverse employment action."). The court finds, therefore, that Plaintiff has failed to show that the circumstances surrounding her promotion denial gives rise to an inference of discrimination.

For similar reasons, Plaintiff has failed to establish an inference of discrimination based on her termination in 2015. Plaintiff points to (1) comments made by Arcaro, the Market Manager of her branch and her superior at the time, and (2) the fact that Spence was not terminated although she purportedly also breached Chase's policies and procedures. (Pl. Mem. at 6-8.)

With regard to Spence, Plaintiff appears to be arguing that Spence was a similarly-situated employee outside her protected class who was treated differently. (Id.) Plaintiff's argument is without merit because Spence is not a similarly situated employee outside Plaintiff's protected class.[3] Plaintiff and Spence are not similarly situated because they held different positions and engaged in different conduct. "When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, . . . the plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (emphasis added) (citation and internal quotation marks omitted). The court must consider "whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and . . . whether the conduct for which the employer imposed discipline was

---

[3] Plaintiff asserted in her affidavit that Ms. Spence is of Asian and Indian national origin. (Pl. Aff. ¶ 33.) In Ms. Spence's declaration, she stated that she is "an African-American woman . . . ." (Spence Decl. ¶ 1.) The court will not weigh these contradictory statements against each other because the issue may be resolved on certain uncontroverted facts.

of comparable seriousness." Id. at 40. Plaintiff was a Branch Manager, whereas Spence was a

Personal Banker, a subordinate of Plaintiff's. (Def 56.1 ¶ 3-5, 59.) Because of the difference in

their positions, they were subject to different "workplace standards." See id. Moreover, Chase's

investigation found that there was no evidence that Spence either provided her login information

to Plaintiff or failed to safeguard it. (Id. ¶ 94.) However, with respect to Plaintiff, Chase found,

through surveillance video and teller transactions, that she had used Spence's account to conduct

business, which is a violation of Chase's policies and procedures. (Def. 56.1 ¶ 71-85.) This is so

even if Plaintiff was unaware that she was using Spence's account, which Plaintiff contends is

the case. (See Id. ¶ 93.) Plaintiff and Spence therefore did not engage in the same conduct and

were not similarly situated.

Arcaro's comments, furthermore, do not constitute circumstances which give rise to an

inference of race discrimination. Plaintiff testified that Davis, another one of Plaintiff's

superiors who was subordinate to Arcaro, told Plaintiff that Arcaro ordered Davis to fire several

black employees and that Davis believed the firing was racially motivated. (See Pl. Dep. A at

100.) Plaintiff also testified that Davis told her that Arcaro said an African-American employee,

Courtney Davis, did not obtain a certain position because "he did not fit the color." (Id. at 111.) [4]

Stray remarks, even if made by a decisionmaker, "do not constitute sufficient evidence to

make out a case of employment discrimination . . . without more . . . ." Danzer v. Norden Sys.,

Inc., 151 F.3d 50, 56 (2d Cir. 1998). These facts have little if any probative value on their own

and, in any event, fail to establish that her termination "occurred under conditions giving rise to

an inference of discrimination." Demoret, 451 F.3d at 151. Plaintiff has not articulated how

---

[4] Defendant argues that these statements are inadmissible hearsay and should not be considered in opposition to
defendant's motion for summary judgment. (Mem. at 15.) The court will not address this issue because, even if
these statements are admissible, plaintiff still fails to raise a triable issue of fact necessary to survive summary
judgment on this claim.

these stray comments relate to her termination or even to her. See, e.g., Woodard v. TWC Media Sols., Inc., No. 09-CV-3000 (BSJ), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011) (holding that the plaintiff failed to establish a prima facie case because she had "not demonstrated how such comments affected or were related to the termination decision"), aff'd sub nom. Lawless v. TWC Media Sols., Inc., 487 F. App'x 613 (2d Cir. 2012).

Under these circumstances, Plaintiff has failed to make out a prima facie case of discrimination on account of her age or race. Thus, summary judgment must be granted on her disparate treatment claims under state and federal law.

### 3. Pretext

Additionally, even if Plaintiff had made out a prima facie case on these claims, she has nevertheless failed to establish pretext. Chase has proffered legitimate reasons which, if "taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse actions taken against her. Hicks, 509 U.S. at 509. Chase asserts that it terminated Plaintiff because she violated Chase's policies and procedures, which was especially problematic because one of Plaintiff's main job functions was to ensure that the branch complies with Chase's policies and procedures. (See Def 56.1 ¶¶ 4, 95.) See Shah v. Eclipsys Corp., 2010 WL 2710618, at *10 (E.D.N.Y. July 7, 2010) (collecting cases) ("To be a valid legitimate, nondiscriminatory reason for termination, an employer's belief need not be correct, only honestly held."); see also Peterson v. Connecticut Light & Power Co., 2014 WL 7156648, at *6 (D. Conn. Dec. 15, 2014) ("[A]n employer's good faith belief that an employee engaged in misconduct is a legitimate reason for terminating her, and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." (emphasis and internal quotation marks omitted)). The burden to prove that these reasons were pretext for

21

Chase's allegedly discriminatory adverse actions therefore shifts to Plaintiff. McDonnell Douglas, 411 U.S. at 802. She has not met that burden for much the same reasons she failed to establish a reasonable inference of discrimination. Plaintiff does not refer to any evidence that her termination was motivated by discriminatory intent beyond that which she generally asserted trying to meet her prima facie burden.

## B.    Disparate Treatment Claims Under City Law

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). "[T]he NYCHRL is reviewed . . . more liberally than federal or state discrimination claims, but a plaintiff still must prove 'the conduct is caused at least in part by discriminatory or retaliatory motives.'" Fenner v. News Corp., No. 09-CV-9832 (LGS), 2013 WL 6244156, at *17 (S.D.N.Y. Dec. 2, 2013) (quoting Mihalik, 715 F.3d at 113). Still, "the NYCHRL is not a general civility code." Mihalik, 715 F.3d at 110 (quotation marks omitted). "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. . . . She must show that she has been treated less well at least in part because of her [membership in a protected class]." Id. (quotation marks omitted) (emphasis in original).

The NYCHRL does not require an adverse employment action and a plaintiff must only provide evidence she was treated "less well" than other employees based on her protected status. See, e.g., Williams v. Regus Mgmt. Grp., LLC, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011); Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 160 (E.D.N.Y. 2011). Despite this lower standard, a moving defendant is entitled to summary judgment upon showing, as an affirmative defense, that a reasonable jury could not interpret the alleged discrimination as anything more than "petty slights or trivial inconveniences." Mihalik, 715 F.3d at 114. For the

22

same reasons as addressed above, Defendant has met that burden here.

Accordingly, Chase's motion for summary judgment as to Plaintiff's disparate treatment claims is GRANTED.

### C.   Hostile Work Environment Claims

Plaintiff also asserts claims for a hostile work environment under Title VII, the ADEA, the NYSHRL, and the NYCHRL.  Her state and federal claims are analyzed under the same standard.  Fordham v. Islip Union Free Sch. Dist., 662 F. Supp. 2d 261, 271 n.5 (E.D.N.Y. 2009) (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)).  Under those statutes, a hostile work environment claim requires a showing that "(1) 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) 'a specific basis exists for imputing the conduct that created the hostile environment to the employer.'"  Lekettey v. City of New York, 637 F. App'x 659, 661 (2d Cir. 2016) (alteration in original) (quoting Howley v. Town of Stratford, 217 F.3d 141, 153-54 (2d Cir. 2000)).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  Littlejohn, 795 F.3d at 321 (quotation marks omitted).  That is, "unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).  "Among the factors [that courts] consider are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with [the] employee's work performance.'" Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).

The incidents that purportedly constitute a hostile environment are all attributed to either Mumcuoglu's or Arcaro's conduct and/or statements. Namely, Plaintiff contends that she witnessed Mumcuoglu "verbally discriminated against two African-American employees directly to Plaintiff" and heard him make "disparaging comments about their hair and dress." (Pl. Mem. at 9.) Plaintiff conceded that Mumcuoglu did not "state any personal racist tirades against Plaintiff." (Id.) Plaintiff also contends that she listened to her direct supervisor cry about "racism performed" by Arcaro. (Id. at 11.)

Assessing "the totality of the circumstances," Gorzynski, 596 F.3d at 102, the court finds that Plaintiff cannot establish a hostile-environment claim. First, the events Plaintiff sets out were not sufficiently severe or pervasive to support her claim. While the allegations may have been upsetting to Plaintiff, no single incident comes close to having been "extraordinarily severe," see Alfano, 294 F.3d at 374. Second, the incidents Plaintiff describes were not "continuous and concerted," nor did they "alter[] the conditions of her working environment." See id. The conduct was not facially discriminatory or excessive; rather, the record indicates "only limited [and] infrequent" conduct that could, at worst, be described as "mildly offensive" and that cannot support Plaintiff's hostile-environment claim. See Cristofaro v. Lake Shore Cent. Sch. Dist., 473 F. App'x 28, 30 (2d Cir. 2012) (summary order). Moreover, even the Plaintiff admits that Mumcuoglu's offensive conduct was directed at everyone, rather than the

Plaintiff in particular or individuals in the plaintiff's protected class. (Pl. Dep. A at 92:10-17).

See Mihalik, 715 F.3d at 110 ("[Plaintiff] must show that she has been treated less well [than other employees] at least in part because of her [protected class].") (internal quotations omitted).

The Court also concludes that Plaintiff has not established that any of these actions occurred on account of a protected status. Plaintiff does not explain which evidence she offers as proof of mistreatment "on account of" her particular protected classes. See In re World Trade Center Lower Manhattan Disaster Site Litigation, 2015 WL 13681020, at *1 (S.D.N.Y. April 21, 2015) ("[A] District Court is not required to scour the record on its own in search for evidence where the non-moving party fails to adequately present it." (citation and internal quotation marks omitted)).

Finally, Plaintiff's NYCHRL hostile-environment claim fails for similar reasons. Under the NYCHRL, a plaintiff need not demonstrate that the treatment was "severe or pervasive." Barounis v. N.Y.C. Police Dep't, No. 10-CV-2631 (SAS), 2012 WL 6194190, at *9 (S.D.N.Y. Dec. 12, 2012) (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 39 (App. Div. 2009)). Instead, the plaintiff need only show that she has been "treated less well than other employees because of" her protected class. Id. However, even if the plaintiff points to evidence of unequal treatment, the defendant can prevail on summary judgment by proving that the conduct in question "could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences." Williams 872 N.Y.S.2d at 41. "The NYCHRL . . . is not a 'general civility code' and 'petty slights and trivial inconveniences' are not actionable under it." Barounis, 2012 WL 6194190, at *9 (internal citations omitted) (first quoting Williams, 872 N.Y.S.2d at 40; and then quoting id. at 41). For the same reasons as explained above, the court finds that the conduct alleged by Plaintiff does not rise above the level

25

of "petty slights and trivial inconveniences."

Accordingly, Chase's motion for summary judgment as to Plaintiff's hostile-environment claims is GRANTED.

## V.    RETALIATION CLAIMS

Plaintiff's federal and state law retaliation claims are, like her discrimination claims, reviewed under the burden-shifting approach of McDonnell Douglas. See Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir. 2013). To establish a prima facie case for retaliation, Plaintiff must show (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. Id. at 844 (citing Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)). As with discrimination claims, if Plaintiff meets her prima facie burden, Defendant must then "demonstrate that a legitimate, non-retaliatory reason existed for its action[s]." Lennert-Gonzalez v. Delta Airlines, Inc., No. 11-CV-1459 (JMF), 2013 WL 754710, at *9 (S.D.N.Y. Feb. 28, 2013). Once Defendant does so, the burden shifts back to Plaintiff, who must ultimately establish that Defendant's "action was, in fact, motivated by discriminatory retaliation." Id. Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action. Nassar, 570 U.S. at 352. The court finds that the plaintiff has failed to establish a prima facie case of retaliation under Title VII, NYSHRL, and NYCHRL.

Insofar as Plaintiff's retaliation claim rests on any stray remarks made by Arcaro or other Chase employees, as discussed above, these remarks are insufficient to raise an inference of retaliation. See Alexander v. Bd. of Educ., 107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015). Plaintiff

has not put forth any evidence suggesting that these remarks establish retaliatory intent, nor has she plausibly connected these remarks to any adverse actions she suffered.

Plaintiff claims that Chase retaliated against her for issuing a complaint against Mumcuoglu by denying her promotion in 2013. (Pl. Mem. at 13-14.) Plaintiff has established that she participated in a protected activity by filing a formal complaint with Chase's Human Resources Department. (Def 56.1 ¶ 27.) Filing a complaint to management is a protected activity under Title VII. See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000), superseded by statute on other grounds; Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2d Cir. 1990); Lamberson v. Six W. Retail Acquisition, Inc., 122 F. Supp. 2d 502, 511 (S.D.N.Y. 2000). Plaintiff has also shown that Defendant knew of the protected activity. (See DiMattia Dec. Ex. I (Dkt. 38-12).) And, as established above, Plaintiff suffered an adverse employment action by being denied a promotion in 2013. See Terry, 336 F.3d at 139.

However, at this stage, Plaintiff fails to establish a causal connection between the protected activity and the adverse employment action. "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). The Supreme Court has noted that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir.

2001); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (4-month period insufficient.)). Here, Plaintiff has not offered any direct evidence of retaliatory animus against her by or on behalf of Defendant. In addition, the court finds that Plaintiff has failed to present even circumstantial evidence regarding the decisionmakers' knowledge of plaintiff's protected activities.

Plaintiff asks the court to find a causal connection here based merely on temporal proximity. The record establishes that Plaintiff applied for a District Manager position in Queens at some point in May of 2013. (Def 56.1 ¶ 15.) The record also indicates that Plaintiff complained to Chase's Human Resources department about Mumcuoglu on or about June 24, 2013. (Id. ¶ 27.) However, after a careful review of the record, there is no clear indication that Plaintiff was denied her promotion before or after she complained about Mumcuoglu. Without even an allegation that Plaintiff was denied her promotion after she complained to Chase, the court cannot find that she has satisfied her burden to establish a causal connection between the protected activity and the adverse action.

Plaintiff's retaliation claim also fails to satisfy the causal connection prong of the prima facie standard. Plaintiff acknowledges that she is unaware who made the ultimate decision with regard to her denied promotion. (Id. ¶ 18.) This alone is fatal to Plaintiff's retaliation claim. See, e.g., Laurin v. Pokoik, No. 02-CV-1938 (LMM), 2005 WL 911429, at *5 (S.D.N.Y. April 18, 2005) (noting that, in order to establish a prima facie case of retaliation, the plaintiff "must demonstrate not only that [the defendant corporation] as an entity knew of [the plaintiff's] engagement in the protected activities, but also that the actual decisionmaker(s) knew about her protected activities as well"); Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 584

28

(E.D.N.Y. 2006) ("In short, the plaintiff has failed to establish a prima facie case of retaliation because there is no evidence that any of the decisionmakers was aware of the plaintiff protected activity and thus no evidence of a causal connection."); Philippeaux v. Fashion Inst. of Tech., No. 93-CV-4438 (SAS), 1996 WL 164462, at *6 (S.D.N.Y. April 9, 1996) ("In order to prevail on his retaliation claims, ... [the plaintiff] must demonstrate not only that [the defendant school] as an entity knew of his engagement in the protected activity, but also that the actual decisionmaker(s) knew about it as well." (internal citation omitted)). Thus, the court finds, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to offer any evidence that the individuals responsible for the adverse employment action at issue here knew of Plaintiff's protected activity.

A.    **Retaliation Claim Under NYCHRL**

The NYCHRL's retaliation provision "protect[s] plaintiffs who oppose any practice forbidden under the law from conduct reasonably likely to deter a person engaging in such action." Chen v. City Univ. of N.Y., 805 F.3d 59, 76 (2d Cir. 2015) (alteration adopted) (internal quotation marks omitted). In order to succeed on her claim, Plaintiff must be able to show that the decisionmaker who denied Plaintiff of her promotion "engaged in some prohibited conduct" and that the "decision to do so was caused at least in part by retaliatory motives." Id. (alteration adopted) (internal quotation marks omitted). In short, the NYCHRL is slightly more solicitous of retaliation claims than federal and state law in that it does not require a showing of an 'adverse employment action,' but rather only that something happened that was "reasonably likely to deter a person from engaging in a protected activity." Rozenfeld v. Dep't of Design & Const. of New York, 875 F. Supp. 2d 189, 208 (E.D.N.Y. 2012), aff'd, 522 F. App'x 46 (2d Cir. 2013) (citation omitted). Otherwise, a prima facie case of retaliation faces the same requirements under

NYCHRL as under NYSHRL or Title VII.  <u>Malena v. Victoria's Secret Direct, LLC</u>, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012).

Plaintiff has failed to meet this standard because, as described above, there is simply no causal connection between any alleged protected activity and any action taken by Defendant that reasonably could be construed as likely to deter a person from engaging in protected activity. Based on these facts, there is insufficient evidence to infer a causal connection between Plaintiff's protected activities and her promotion denial.  For this reason, plaintiff's retaliation claim must also fail under NYCHRL.

Accordingly, Chase's motion for summary judgment as to Plaintiff's claims of retaliation is GRANTED.

## VI.   CONCLUSION

For the foregoing reasons, the court GRANTS Chase's motion for summary judgment (Dkt. 38).  The Clerk of Court is respectfully DIRECTED to enter judgment for Defendant and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      September **30**, 2018

NICHOLAS G. GARAUFIS
United States District Judge